UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT WILKINS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. _____ |
| Plaintiff, | ) ) | DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| INSOMNIA COOKIES, LLC and INSOMNIA COOKIES OPERATORS, LLC, | ) ) ) ) | COMPLAINT – CLASS ACTION |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Robert Wilkins ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Insomnia Cookies, LLC and Insomnia Cookies Operators, LLC (collectively "Defendants" or "Insomnia Cookies"). In support, he states and alleges as follows:

**INTRODUCTION**

1. This is a class action against Insomnia Cookies for its wrongful retention of drivers' tips. Insomnia Cookies relies on third-party drivers, like Plaintiff, when it is short-handed to meet its customer demand. Plaintiff is a driver for Uber Technologies, Inc. ("Uber"). Uber offers both rideshare and food or similar delivery services through its app. Its food delivery service is commonly known as "Uber Eats." Drivers for companies like Uber are often students, single parents, or in Plaintiff's situation, caregivers for an ailing relative, i.e. those who require a flexible schedule. When Insomnia Cookies utilizes the conveniences of Uber Eats to deliver its orders, it treats the drivers as something less than its own and steals those drivers' tips in order to line its

1

already full pockets. As a result, Plaintiff has lost hundreds of dollars in tips that Insomnia Cookies' customers reasonably believed they were paying to Plaintiff as gratitude for his delivery services. Plaintiff brings this action to recoup his losses and those of putative Class members through claims of conversion, trespass to chattel, and unjust enrichment.

## PARTIES

2. Plaintiff Robert Wilkins is an individual and resident of Lee County, Alabama.

3. Defendant Insomnia Cookies, LLC is a foreign limited liability company existing under the laws of the State of Delaware with its principal place of business at 10 Campus Blvd., Newtown Square, Pennsylvania 19073.

4. Defendant Insomnia Cookies Operators, LLC is a foreign limited liability company existing under the laws of the State of Delaware with its principal place of business at 10 Campus Blvd., Suite 1, Newtown Square, Pennsylvania 19073.

5. According to its website, "Insomnia Cookies was founded in a college dorm room in 2003 at the University of Pennsylvania . . . ." About Us, Insomnia Cookies, https://insomniacookies.com/about (last visited July 5, 2022).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to this Court's personal jurisdiction.

**GENERAL ALLEGATIONS**

8. Plaintiff Robert Wilkins was originally a driver for Postmates, but when Postmates was acquired by Uber Technologies, Inc. in December 2020, he became a driver for Uber Eats.

9. As a driver for Uber Eats, Mr. Wilkins is asked to pick up various orders from places like restaurants and grocery stores and deliver them to users of the Uber app and services. Orders for food deliveries are generally placed by Uber customers directly through the Uber Eats website or app. However, Mr. Wilkins is sometimes requested by independent businesses through the Uber app to make deliveries for those businesses to their customers.

10. Insomnia Cookies serves and delivers cookies from over 100 locations throughout the United States, including in Auburn, Alabama at 181 North College Street. Insomnia Cookies has its own online ordering platform where customers order cookies directly from the company's website for delivery or pickup. Similar to the Uber Eats' platform, there is an option to tip when placing an order on Insomnia Cookies' website.

11. Insomnia Cookies also hires its own delivery drivers to fulfill orders placed on its website, but when it is short on drivers or there is a high demand for deliveries, it uses third-party services like Uber Eats to deliver its cookies. In this situation, Insomnia Cookies is considered an Uber Eats' customer, which means that Insomnia Cookies sends a request to Uber to pick up and deliver the order made through Insomnia Cookies' platform. Upon information and belief, payment for the order, including tips, is made first to Insomnia Cookies, and then, Insomnia Cookies pays Uber for the delivery service.

12. On August 19, 2020, Plaintiff reached out online to Postmates explaining that he had not received a tip on sixty-one deliveries with Insomnia Cookies between August 11, 2020 and August 18, 2020. By comparison, he received $26.99 in tips for only eight deliveries on

August 10, 2020. Plaintiff requested an audit of the sixty-one deliveries and stated that he would be cancelling all Insomnia Cookies deliveries until he received a response. In response via emails on August 19, 2020 – one from an automated source and the other from a "Fleet Support Specialist" named Elena H. – Postmates ignored Plaintiff's request for an audit and reminded Plaintiff that it does not keep any of its drivers' tips.

13. In an email dated August 31, 2020, Plaintiff expressed his frustration with Postmates. He also explained that over 90% of the Insomnia Cookies' orders have tips on the receipts. However, he had not received a single tip since August 12, 2020 despite making ninety-three deliveries for Insomnia Cookies. After a couple more emails back and forth between Plaintiff and Postmates, Elena H. responded on August 31, 2020 that she had investigated Plaintiff's issue further. She could see that there was no tip reflecting from the deliveries Plaintiff referred to. She believed the tip was applied directly to Insomnia Cookies as it was Insomnia Cookies that made the delivery order. As explained further in an email dated August 31, 2020 from a different "Fleet Support Specialist" named Greg W., any tips were directed to Insomnia Cookies.

14. The following day, Plaintiff reached out to Insomnia Cookies directly to try and have the issue resolved. He contacted Insomnia Cookies' customer service, explained that he had made over ninety deliveries without receiving any tips, and noted what Postmates had told him, i.e. that Insomnia Cookies was the customer and was keeping his tips. A Customer Service Team Lead named Melynda responded and told him that he needed to contact the manager of the bakery he was delivering for.

15. The next day, September 2, 2020, he did just that. Plaintiff emailed the local manager for the Insomnia Cookies location in Auburn, Alabama, Kelli Fears. He again explained his predicament. Ms. Fears responded and apologized. She noted that they had been having issues

4

with Postmates, including fee glitches. She asked that he email her the orders he had taken so she could look into it. Importantly, she noted that the company "aim[ed] to make sure you guys get your tips."

16. The issue was never fully resolved, and Plaintiff spent months going further up the chain of command at Insomnia Cookies. For example, he communicated several times via email and phone with Charlene Bellamy, Director of Operations at Insomnia Cookies throughout January 2021. In his first email to Ms. Bellamy on January 17, 2021, Plaintiff attached a copy of a spreadsheet that he put together documenting all of his deliveries for Insomnia Cookies after August 27, 2020 where he received a tip.[1] At the time, Plaintiff estimated that he had been shorted over $350. Ultimately, those conversations with Ms. Bellamy ended after she explained to Plaintiff on the phone on or around January 28, 2021 that the tip issue was Postmates's responsibility.

17. Plaintiff's emails with Ms. Bellamy were then forwarded to Suzanne Toner, VP of People at Insomnia Cookies, by Seth Berkowitz, Insomnia Cookies' Founder and CEO, on January 28, 2021. Ms. Toner reached out to Plaintiff on February 1, 2021 about setting up a time to discuss his issues.

18. On March 8, 2021, Plaintiff emailed Mr. Berkowitz an updated copy of his tip spreadsheet and estimated that he was due $409.45 in unpaid tips. He noted that he had dealt with Ms. Bellamy, Ms. Toner, and Kellie Fears, all of whom assured him that the tip issue would be resolved. He received a response from Ms. Toner the following day stating that she assumed the tips had been paid out but had followed up with the team and would have an answer for him that afternoon.

---

[1] Plaintiff made a total of seventy-one deliveries for Insomnia Cookies between August 11, 2020 and August 27, 2020. He does not have receipts from these deliveries because he was unaware at the time that Insomnia Cookies was retaining his tips.

5

19. On June 21, 2021, Plaintiff again emailed Mr. Berkowitz noting that it had been almost a year of dealing with this issue. Plaintiff stated that he had been told over and over that the issue would be worked out by Insomnia Cookies but that in his last conversation with Ms. Toner, he was told that he was not due anything else.

20. On December 12, 2021, Plaintiff contacted Ms. Toner to let her know that his tips were again being stolen by the Defendants. An email from Ms. Toner dated December 22, 2021 asking about the dates on which Plaintiff "believe[d]" he was not paid tips was the last correspondence between Plaintiff and Defendants.

21. Through his exhausting efforts raising this issue time and again with Insomnia Cookies, Plaintiff was reimbursed some – but not nearly all – of the tips he earned on Insomnia Cookies deliveries.

22. Plaintiff has been making deliveries for Postmates (now Uber Eats) for years and has not had a problem with any company other than Insomnia Cookies, having regularly been paid tips for his other deliveries. Because of Insomnia Cookies' actions, Plaintiff and other similarly situated individuals have been cheated out of their hard-earned pay – tips that customers believed were going to Plaintiff and putative Class members as a compliment for their services. By their actions, Insomnia Cookies has committed conversion, trespass to chattel, and has been unjustly enriched.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of himself and as a representative of the following Class:

> All persons who (1) made deliveries while working for a third-party delivery service, such as Uber Eats or Postmates, for orders placed directly through Insomnia Cookies and (2) did not timely receive the entire tip paid by an Insomnia Cookies' customer for the delivery.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

59. Plaintiff's Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

60. The persons who fall within the Class number at least in the hundreds, satisfying the numerosity requirement. Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

61. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The questions of fact and law common to the Class arising from Defendants' actions include, without limitation, the following:

    a. Whether Defendants wrongfully retained tips belonging to Plaintiff and putative Class members;

    b. Whether Defendants converted tips belonging to Plaintiff and putative Class members;

    c. Whether Defendants committed a trespass to chattel by dispossessing Plaintiff and putative Class members of their tips;

    d. Whether Defendants were unjustly enriched;

    e. Whether Defendants did not timely pay or reimburse Plaintiff and putative Class members the entire tip paid by the customer for the delivery; and

    f. Whether the Class is entitled to damages, restitution, and/or other relief as a remedy for Defendants' misconduct.

62. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

63. Plaintiff's claims are typical of those of the Class in that each Class member, while driving for a third-party company, made at least one delivery for Defendants without being paid the tips that they earned and were given by Defendants' customer.

64. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class. The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

65. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of those he seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex class litigation.

66. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts, which could result in inconsistent adjudications while a single class action can determine, with judicial economy, the rights of all Class members.

## COUNT I: CONVERSION

67. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

62. To the extent this count is inconsistent with any of the others, it is pled in the alternative.

63. Plaintiff and the Class had a property interest in the tips that Defendants' customers gave them for their services. The tips belonged to Plaintiff and the Class at all times.

64. Plaintiff and the Class had a right to immediate possession of the tips upon payment by Defendants' customers for the respective delivery.

65. Defendants misappropriated or misapplied specific and identifiable funds placed in the custody of Defendants for the benefit of Plaintiff and the Class by retaining the tip portion of the payments received for delivery orders placed with Defendants, without authorization or consent, and diverted those funds for their own use. Defendants had no legal justification for their actions.

66. In so doing, Defendants have exerted ownership and dominion over Plaintiff and putative Class members' personal property in denial of Plaintiff and putative Class members' rights.

67. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have been damaged.

68. The amount that Defendants took from Plaintiff and the Class is capable of determination, to an identified sum, by reviewing the tip amount on the Defendants' order receipts and comparing that to the tip received by Plaintiff and putative Class members as reflected in their account with the third-party delivery company (Uber Eats, Postmates, etc.).

69. On behalf of himself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by Defendants' conduct.

70. Defendants intended to cause damage to Plaintiff and the Class by stealing their tips for Defendants' own profit. Defendants' conduct was, therefore, malicious, and Defendants are also guilty of oppression in that their systematic acts of conversion subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages.

## COUNT II: TRESPASS TO CHATTEL

71. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

72. To the extent this count is inconsistent with any of the others, it is pled in the alternative.

73. Plaintiff and the Class had a property interest in the tips that Defendants' customers gave them for their services. The tips belonged to Plaintiff and the Class at all times.

74. Plaintiff and the Class had a right to immediate possession of the tips upon payment by Defendants' customers for their respective delivery.

75. Defendants intentionally interfered with or intermeddled in Plaintiff and Class members' possessory rights to the tips they received for delivery orders placed with Defendants, without authorization or consent, by retaining and using those tips for itself.

76. Defendants intentionally dispossessed Plaintiff and Class members of their tips, resulting in Plaintiff and Class members receiving $0 in tips for deliveries where Defendants' customers had tipped something greater than $0. In so doing, Plaintiff and the Class were deprived of their hard-earned gratuities. Defendants had no legal justification for their actions.

77. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have been damaged.

78. The amount that Defendants took from Plaintiff and the Class is capable of determination, to an identified sum, by reviewing the tip amount on the Defendants' order receipts and comparing that to the tip received by Plaintiff and putative Class members as reflected in their account with the third-party delivery company (Uber Eats, Postmates, etc.).

79. On behalf of himself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by Defendants' conduct.

80. Defendants intended to cause damage to Plaintiff and the Class by stealing their tips for Defendants' own profit. Defendants' conduct was, therefore, malicious, and Defendants are also guilty of oppression in that their systematic acts of trespass to chattel subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages.

## **COUNT III: UNJUST ENRICHMENT**

81. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

82. To the extent this count is inconsistent with any of the others, it is pled in the alternative.

83. Defendants knowingly accepted and retained Plaintiff and putative Class members' tips. Delivery orders made online through Defendants' website provide Defendants' customers with an option to add a tip. When customers add a tip, as they generally do, Defendants retain that tip for themselves and their own financial gain rather than provide it to the third-party delivery driver.

84.     Defendants rely on Plaintiff and putative Class members, who are drivers for third-party delivery companies, when they are short on their own delivery drivers or cannot meet their demand.  Defendants' own delivery drivers receive tips for their services.  *See* Search Jobs, INSOMNIA COOKIES, https://careers.insomniacookies.com/jobs/search (Follow "DELIVERY DRIVER (Car)" hyperlink(s)) (listing the job's "perks" to include "High hourly earnings potential with no cap on tips").  Likewise, Plaintiff and putative Class members receive the tips paid for their deliveries with third-party companies, such as Uber Eats.  *See, e.g.*, Tipping, UBER, https://www.uber.com/us/en/drive/driver-app/how-tips-work/ ("How much of the tip goes to me vs. Uber? There are zero service fees applied to your tips.").  Thus, Plaintiff and putative Class members had a reasonable expectation that they would receive the tips paid by Defendants' customers for their deliveries.

85.     Under the circumstances, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and members of the putative Class.

86.     As a direct and proximate result of Defendants' actions, Defendants have been unjustly enriched.  Plaintiff and other members of the putative Class have a right to restitution in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief as follows: an order certifying this case as a class action under FED. R. CIV. P. 23; compensatory damages in an amount to be proven at trial; costs; pre- and post-judgment interest at the maximum rate allowed by law; attorneys' fees; punitive damages; restitution; and such other legal and equitable relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: August 2, 2022

_____

Kenneth J. Grunfeld
Richard Golomb
**GOLOMB SPIRT GRUNFELD PC**
1835 Market Street
Suite 2900
Philadelphia, Pa. 19103
215 985-9177
rgolomb@GolombLegal.Com
KGrunfeld@GolombLegal.Com

Robert G. Methvin (*to be admitted pro hac vice*)
James M. Terrell (*to be admitted pro hac vice*)
Courtney C. Gipson (*to be admitted pro hac vice*)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone:   (205) 939-0199
Facsimile:    (205) 939-0399
rgm@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

*Attorneys for Plaintiff*